UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS PATRICK,<br><br>    Plaintiff,<br><br>    v.<br><br>PIERCE, et al.,<br><br>    Defendant. | No. 2:17-cv-1205-KJM CKD P<br><br>ORDER |

I. **Introduction**

Plaintiff is a former state prisoner[1] proceeding pro se and seeking relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

II. **Application to Proceed In Forma Pauperis**

Plaintiff requests leave to proceed in forma pauperis. (ECF No. 2.) Since plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a), his request will be granted.

////

---

[1] Plaintiff was in custody at the time he filed the complaint, but has filed a notice of change of address that indicates he has since been released. ECF No. 10.

**III.     Statutory Screening**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity and complaints brought by individuals proceeding in forma pauperis. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff has raised claims that are legally "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) .

A claim "is [legally] frivolous where it lacks an arguable basis either in law or fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the "factual contentions are clearly baseless." Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Franklin, 745 F.2d at 1227 (citations omitted).

In order to avoid dismissal for failure to state a claim, a complaint must contain more than a "naked assertion," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted), and construe the complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S.

411, 421 (1969) (citations omitted).

## IV. **Complaint**

The complaint asserts six claims against defendants Pierce, Crozier, Sanchez, Quick, Hernandez, Kaplain, Huisar, Altshuler, Perez, and Chudy.

Claim One alleges that on March 20, 2017, while being escorted to treatment group by Crozier, Pierce jumped from a chair and advanced toward plaintiff "in a violent manner with a rude and angry look on his face using hand and arm motion intending to assault then turned the other way and continued walking." (ECF No. 1 at 6.) Both Crozier and Altshuler witnessed the incident and failed to report it, and defendant Kaplain likewise failed to report the incident after being informed by plaintiff. (Id.)

In Claim Two, plaintiff alleges that on March 22, 2017, Sanchez was escorting him to treatment group when suddenly Pierce began advancing toward him while angrily waving his baton as if intending to strike, but changed direction and walked away when he was about five feet from plaintiff. (Id. at 7.) Both Sanchez and Altshuler witnessed the incident, yet failed to report it, and plaintiff later informed defendant Kaplain of the incident, but he too failed to report it. (Id.)

Claim Three similarly states that on March 29, 2017, while being escorted to treatment group by Quick, Pierce approached plaintiff in an aggressive manner while clutching his baton as if preparing to strike. (Id. at 10.) Neither Quick, Alshuler, or Kaplain reported the incident after having witnessed it personally, or being informed of it by plaintiff. (Id.)

Claim Four asserts that on April 25, 2017, Pierce attempted to forcefully handcuff plaintiff—which caused him to experience fear of sexual abuse based on a past interaction with Pierce—and, ultimately, Sanchez was called to apply handcuffs to plaintiff, which he deliberately did too tightly. (Id. at 11.) Hernandez witnessed Pierce's handcuff attempt, and Kaplain was informed of the incident, but no report was made. (Id.)

In Claim Five, plaintiff claims that on April 28, 2017, while being escorted to "CTC," "Huisar jerked [his] body away from the Lt.'s office in a violent manner," then "violently jerked [his] body away from the cage," causing him to lose his balance. (Id. at 8.) Huisar then

| | |
|---|---|
| 1 | proceeded to "slam[] [him] into the A.D.A. cage while hand cuffed from behind violently chest |
| 2 | first, then left knee injuring [his] knee and snapping [his] neck back causing pain." (Id.) Plaintiff |
| 3 | continued to be pinned against the cage until another officer convinced Huisar to release him. |
| 4 | (Id.) Altshuler allegedly witnessed Huisar jerk him away, but did not report the incident. (Id.) |
| 5 | Finally, in Claim Six, plaintiff alleges that on May 1, 2017, he was examined regarding |
| 6 | the injuries sustained in the April 28, 2017 incident involving Huisar. (Id. at 9.) Perez, who is a |
| 7 | nurse, performed the examination, determined that there was "nothing wrong," and denied |
| 8 | plaintiff's request for an immediate x-ray and examination by a doctor. (Id.) Perez informed |
| 9 | plaintiff that he must wait for his previously-scheduled appointment, which was set to occur on |
| 10 | May 5, 2017. (Id.) Plaintiff was never called for the May 5, 2017 appointment, but he was |
| 11 | examined by Chudy on May 8, 2017, regarding an unrelated appeal. (Id.) During that May 8, |
| 12 | 2017 examination, Chudy evaluated both plaintiff's neck and knee, but determined that there was |
| 13 | still "nothing wrong" with either and denied him an MRI, knee x-rays, and a knee brace. (Id.) |
| 14 | Claim Six continues on by claiming that two officers were instructed by Dr. Rudas, who is |
| 15 | not a defendant, to use waist-chain cuffs because of plaintiff's neck injury. (Id. at 12.) He claims |
| 16 | that during his three-month placement in administrative segregation he was denied the use of |
| 17 | waist-chain cuffs when Pierce placed a sign on his cell door saying "no waist chain needed." (Id.) |
| 18 | This denial of waist-chain cuffs, plaintiff asserts, left him at the mercy of Sanchez, who would |
| 19 | apply the handcuffs too tightly, which left marks and cuts on his wrists. (Id.) When plaintiff |
| 20 | ultimately refused to be cuffed, Sanchez would use that as an excuse to deny plaintiff the ability |
| 21 | to attend treatment. (Id.) |

## V. Discussion

Although plaintiff styles all but one of his claims as arising under the equal protection clause of the Fourteenth Amendment, these claims more appropriately fall under the Eighth Amendment's cruel and unusual punishment protections.[2] His claims will be evaluated as such.

---

[2] For claims of excessive use of force, harassment, or failure to protect, the Fourteenth Amendment's Due Process Clause is applicable to pretrial detainees because they may not be punished. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). Because plaintiff's status was that of (continued)

4

### A. Excessive Force and Harassment

In his complaint, plaintiff alleges six incidents of excessive force and harassment. First, in Claims One, Two, and Three, he contends that on three separate occasions while being escorted to treatment group Pierce jumped or charged toward him in an aggressive manner in an attempt to frighten or intimidate. (ECF No. 1 at 6-7, 10.) Second, Claim Four states that while attempting to handcuff plaintiff, Pierce caused him to suffer fear of being sexually harmed based on a past incident involving Pierce, and that when he was actually handcuffed by Sanchez, that handcuffing was done too tightly. (Id. at 11.) Next, in Claim Five, plaintiff states that while being escorted to treatment group, Huisar violently slammed him from behind into the A.D.A. cage while handcuffed, causing injuries to his knee and neck and related emotional distress. (Id. at 8.) Finally, in Claim Six, he states that Sanchez regularly applied handcuffs too tightly, causing him to experience cuts and marks on his wrists. (Id. at 12.)

The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials. "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hope v. Pelzer, 536 U.S. 730, 737 (2002) (alteration in original) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)) (internal quotation marks omitted). An inmate need not suffer a serious injury for an Eighth Amendment violation to occur, Hudson v. McMillian, 503 U.S. 1, 4 (1992), and the "alleged pain may be physical or psychological," Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012) (citing Jordan v. Gardner, 986 F.2d 1521 (9th Cir. 1993) (en banc)). Still, to satisfy this standard, an "inmate must objectively show that he was deprived of something sufficiently serious." Id. (quoting Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009)) (internal quotation marks omitted). The verbal exchange of offensive insults between inmates and guards does not rise to the level of serious deprivation required under the Eighth Amendment. Id. at 1113; see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (citation omitted) (stating that "verbal harassment generally does not

---

a convicted inmate, rather than a pretrial detainee, he could be punished and the Eighth Amendment's prohibition against "cruel and unusual punishments" governed. Id.

violate the Eighth Amendment"), <u>amended on other grounds by</u> 135 F.3d 1318 (9th Cir. 1998). This applies even if the verbal harassment is sexual in nature. <u>Austin v. Terhune</u>, 367 F.3d 1167, 1171 (9th Cir. 2004) ("Although prisoners have a right to be free from sexual abuse, . . . the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." (internal citation omitted)); <u>see also</u> <u>Patrick v. Martin</u>, 402 F. App'x 284, 285 (9th Cir. 2010) (citing <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987)) (sexual harassment claim based on verbal harassment insufficient to state a claim under § 1983).

### 1. **Defendant Pierce**

As to Claims One, Two, and Three, the actions of Pierce are akin to verbal intimidation tactics. Although plaintiff makes no claim of actual verbal threats, Pierce's acts of advancing "in a violent manner with a rude and angry look . . . using hand and arm motion[s]," or while clutching a baton, are merely forms of nonverbal communication intended to intimidate plaintiff. (ECF No. 1 at 6, 7, 10.) While the court certainly does not condone such intimidation tactics, they simply do not rise to the level of deprivation protected by the Eighth Amendment, particularly since in each instance Pierce quickly turned or walked away from plaintiff without making any physical contact. Thus, these claims against Pierce must be dismissed with leave to amend.

Similarly, the allegations against Pierce in Claim Four will be dismissed for failure to show a serious deprivation of plaintiff's rights. In Claim Four, plaintiff describes an interaction in which Pierce attempted to handcuff and escort him from treatment group back to his cell. (<u>Id.</u> at 11.) However, Pierce never actually handcuffed plaintiff and in fact appears not to have had any form of physical contact with plaintiff at that time. (<u>Id.</u>) Instead, this interaction caused plaintiff to feel threatened because of a past incident during which Pierce allegedly "touched [his] penis through the tray slot." (<u>Id.</u>)

On these facts, plaintiff fails to state a valid claim because there is no indication that Pierce harassed or physically touched him in any manner, let alone one that would rise to the level of unnecessary and wanton infliction of pain. Instead, plaintiff relies upon a previous incident to claim Pierce's attempt to escort him to his cell was a violation of his rights. However,

even if true, a single, past incident of unwanted touching, that may or may not have been deliberate, does not turn Pierce's carrying out of a routine duty into a violation of the Eighth Amendment. This is particularly true as it appears that in this instance Pierce did not have any physical contact with plaintiff, did not make any inappropriate comments, and did not have any improper motives. See Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2000) (distinguishing between claims of sexual harassment that involve physical contact and state a claim and those that do not involve physical contact and therefore do not state a claim); Jordan v. Gardner, 986 F.2d 1521, 1527-31 (9th Cir. 1993) (en banc) (finding policy allowing cross-gender clothed body searches violated Eighth Amendment because it was unnecessary and knowingly disregarded the high instance of physical and sexual abuse suffered by female inmates and the probability searches conducted by men would inflict psychological trauma even when conducted in a professional manner); Austin v. Terhune, 367 F.3d 1167, 1171-72 (9th Cir. 2004) (holding that officer exposing himself to inmate from a distance, without physical contact, was not "sufficiently serious" to constitute an Eighth Amendment violation). The Eighth Amendment is simply not intended to provide such a broad safeguard. See Somers v. Thurman, 109 F.3d 614, 622-24 (9th Cir. 1997) (discussing objective harm necessary to state Eighth Amendment claim). For these reasons, the allegations against Pierce in Claim Four will also be dismissed with leave to amend.

### 2. **Defendants Huisar and Sanchez**

Contrary to the claims against Pierce, the allegations against Huisar and Sanchez in Claims Four, Five, and Six are sufficient to state claims for excessive use of force. As set forth above, Claim Five alleges that while plaintiff was being escorted to his treatment group, Huisar violently jerked him around several times and slammed him into the A.D.A. cage while handcuffed, causing injuries to plaintiff's left knee and neck and related emotional trauma. (ECF No. 1 at 8.) Likewise, read in conjunction, Claims Four and Six claim that Sanchez made a habit of deliberately cuffing him "too tight" without any justification, to the point that the cuffs left "marks" and "cuts." (Id. at 11-12.) At the pleading stage, these allegations are sufficient to state claims of excessive use of force, and Huisar and Sanchez will be required to respond to the complaint.

7

### B. Failure to Protect

Relatedly, plaintiff alleges that defendants Crozier, Sanchez, Quick, Altshuler, Kaplain, and Hernandez failed to protect him after personally witnessing or receiving reports of the conduct described in Claims One through Five above.

A claim for failure to prevent harm requires that two elements are satisfied. First, an "inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation omitted). Second, an inmate must show that the prison official's "state of mind is one of 'deliberate indifference' to [the] inmate['s] health or safety." (Id.) (citations omitted). A prison official's state of mind reaches deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; see also Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) ("[T]here is both an objective and a subjective component to an actionable Eighth Amendment violation."). To provide a gauge, deliberate indifference is something "more than mere negligence," but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835.

As described above, Claims One through Three fail to show that plaintiff faced a substantial risk of serious harm from Pierce's conduct. Distant movements by an officer made in an aggressive or frightening manner toward an inmate do not rise to the level of excessive force, nor do they constitute a substantial risk of harm. Similarly, Pierce's attempt to handcuff plaintiff, as outlined in Claim Four, does not invoke the type of protections envisioned by the Eighth Amendment. Thus, because Pierce's actions did not violate plaintiff's Eighth Amendment rights, the defendants who witnessed these incidents would have no reason to believe plaintiff was at risk of harm. As for defendant Kaplain, even if Pierce's actions did violate plaintiff's Eighth Amendment rights, he did not personally witness any of the events and therefore had no opportunity to intervene. Failing to file a report regarding conduct that has already taken place, without more, does not constitute a disregard for an excessive risk to inmate health or safety.

Therefore, the alleged failures to protect asserted in Claims One through Four will be dismissed with leave to amend.

Claim Five also fails to state a claim, but for different reasons. The first prong of the analysis is satisfied because the April 28, 2017 incident involving Huisar shows conditions posing serious harm to plaintiff. (ECF No. 1 at 8.) The second prong, however, fails because plaintiff does not show how Hernandez and Altshuler were deliberately indifferent to plaintiff's risk of harm. Plaintiff explains that when Huisar violently slammed him into the A.D.A. cage, it was "near Ms. Hernandez's desk." (ECF at 1 at 8.) He also alleges that he asked Huiser "why he slammed [him] into the cage in front of Hernandez." (Id.) It is not clear from these statements whether Hernandez was at her desk when the incident occurred or whether plaintiff merely questioned Huiser about the incident after the fact and in front of Hernandez. Since it is not clear that Hernandez actually witnessed the event and failed to respond, or had the opportunity to respond in a way that could have prevented the harm, it is not clear that she possessed a frame of mind amounting to deliberate indifference.

Similarly, plaintiff claims that Altshuler witnessed Huisar "jerk [plaintiff] away from his view," yet he makes no claim that Altshuler actually witnessed Huisar slamming him into the A.D.A. cage—which is the crux of the excessive force claim—or that Altshuler had any inkling that Huisar would escalate the force he was using, thereby providing an opportunity to intervene and protect plaintiff from harm. (Id.) Therefore, plaintiff makes no clear assertion that Altshuler knew of and consciously disregarded plaintiff's harm or potential for harm.

For each of the foregoing reasons, the allegations for failure to protect contained in Claim Five will be dismissed with leave to amend.

### C. Deliberate Indifference and Retaliation

Finally, in Claim Six, there are two components to plaintiff's claim: deliberate indifference and retaliation. First, he alleges that defendants Perez and Chudy failed to treat the pain in his knee and neck caused by the incident alleged in Claim Five. (Id. at 9.) He also claims that Pierce denied his medical accommodation when he prevented the use of waist-chain cuffs by placing a sign on his cell door which read "no waist chain needed," exacerbating his neck injury

and leaving him at the mercy of Sanchez who would apply the handcuffs too tightly.  (Id. at 12.)
Sanchez would then deny plaintiff access to treatment group if he refused to be handcuffed.  (Id.)
In the second component, plaintiff asserts that he was subject to retaliation for reporting the
misconduct.  (Id.)

### 1. Deliberate Indifference

A claim for medical indifference under the Eighth Amendment requires a showing that "acts or omissions [by prison staff are] sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  "First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations and some internal quotation marks omitted).  A difference of opinions about an inmate's medical needs "does not amount to . . . deliberate indifference," Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (citations omitted), nor does "[m]ere 'indifference,' 'negligence,' or 'medical malpractice,'" Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (per curiam) (citation omitted).

#### a. Defendants Perez and Chudy

Here, plaintiff's knee and neck were examined by Perez and then by Chudy one week later, with each examination yielding the same conclusion: there was "nothing wrong."  (ECF No. 1 at 9.)  In essence, plaintiff is asserting that medical staff failed to provide the specific treatment that he felt was necessary to address his worsening neck and knee pain.  (Id.)  He does not, however, claim that medical staff failed to provide any treatment at all.  Instead, he alleges that Perez denied his request for a neck x-ray and would not schedule him for a doctor's appointment because he already had one scheduled in four days.  (Id.)  But although he claims that he was never called for the appointment, there are no allegations that Perez knew he would not be called or that she had anything to do with plaintiff missing the appointment.  (Id.)  With respect to Chudy, plaintiff alleges that Chudy examined his neck and upon request, also examined his knee.  (Id.)  Chudy found nothing wrong and then denied his requests for an MRI, an x-ray, and a knee

10

brace. (Id.)

Plaintiff makes additional allegations that some neck x-rays were deleted from his medical file. (Id.) Though not clear, it appears he may be attempting to claim that the missing x-rays supported his claims of injury. However, he claims that it was nurse practitioner Clark-Barlow, a non-defendant, who deleted the x-rays, and that the deletion was done well before he was seen by either Perez or Chudy. (Id.) There are no claims that suggest Chudy or Perez were aware of the deleted x-rays. (Id.) Even if the claims that the x-rays were deleted and would have shown he was injured are true, they do not establish Chudy or Perez's liability because there is nothing to suggest that either defendant was aware of the x-rays or gave anything less than a good-faith examination and diagnosis based on the information currently before them.

On the facts currently alleged, plaintiff's claims against Perez and Chudy establish no more than a difference of opinion as to the treatment he required, which does not state a claim. Sanchez, 891 F.2d at 242. At most, the allegations point to negligence for failure to order additional testing. However, negligence does not equal deliberate indifference, Broughton, 622 F.2d at 460, and these claims will be dismissed with leave to amend.

### b. Defendant Pierce

As to plaintiff's assertion that Pierce's denial of waist-chain cuffs exhibits deliberate indifference, such an assertion lacks merit. First, to the extent plaintiff claims this denial exhibits deliberate indifference, plaintiff merely states that Dr. Rudas "informed" the two officers to use waist-chain cuffs, but makes no reference to any medical order entitling plaintiff to waist-chain cuffs. (Id.) This indicates that the direction to use waist-chain cuffs was a one-time occurrence, rather than a standing order. Therefore, even at this stage, plaintiff has failed to plead the basic facts necessary to establish a deliberate indifference claim regarding denial of waist-chain cuffs and the claim will be dismissed with leave to amend.

### c. Defendant Sanchez

Plaintiff alleges that defendant Sanchez interfered with his mental health treatment by treating his refusal to be handcuffed by Sanchez as a refusal of treatment, thereby causing plaintiff to miss his treatment sessions. (ECF No. 1 at 12.) Plaintiff's allegations are sufficient to

11

support the inference that Sanchez deliberately made a habit of handcuffing plaintiff too tightly so that plaintiff would refuse to let Sanchez handcuff him in order to avoid injury. This then allowed Sanchez to deny plaintiff access to group treatment on a facially legitimate ground. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citing Estelle, 429 U.S. at 104-05). Liberally construed, plaintiff's allegations are sufficient to state a claim for deliberate indifference against Sanchez, who will be required to respond to the claim.

### 2. Retaliation

Finally, plaintiff alleges that peace officers retaliated against him for reporting the misconduct alleged in Claim Six. (ECF No. 1 at 12.) A First Amendment retaliation claim requires: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted).

Plaintiff makes no specific reference as to who retaliated against him or what adverse actions they took. Because plaintiff has failed to allege these specific facts, he fails to demonstrate that his complaints where the source of motivation for the unspecified retaliatory behavior. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) ("[P]laintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (some internal quotation marks omitted))). Conclusory and unspecified allegations of retaliation are insufficient to state a claim for relief. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing Twombly, 550 U.s. at 555)).

For these reasons, the component of Claim Six that makes general allegations of retaliation will be dismissed with leave to amend.

////

## VI. Leave to Amend

For the reasons set forth above, the court finds that the complaint does not state any cognizable claims against defendants Pierce, Crozier, Quick, Hernandez, Kaplain, Altshuler, Perez, and Chudy. However, it appears that plaintiff may be able to allege facts to remedy this and he will be given the opportunity to amend the complaint if he desires.

Plaintiff may proceed forthwith to serve defendants Huisar and Sanchez on his claims that Huisar used excessive force when he jerked plaintiff around and slammed him into the cage and that Sanchez applied handcuffs too tightly leaving marks and cuts and interfered with his mental health treatment, or he may delay serving any defendant and amend the complaint to attempt to state cognizable claims against defendants Pierce, Crozier, Quick, Hernandez, Kaplain, Altshuler, Perez, and Chudy.

Plaintiff will be required to complete and return the attached notice advising the court how he wishes to proceed. If plaintiff chooses to amend the complaint, he will be given thirty days to file an amended complaint. If plaintiff elects to proceed on his claims against defendants Huisar and Sanchez without amending the complaint, the court will send him the necessary forms for service of the complaint. A decision to go forward without amending the complaint will be considered a voluntarily dismissal without prejudice of all of the claims against defendants Pierce, Crozier, Quick, Hernandez, Kaplain, Altshuler, Perez, and Chudy and of the failure to protect claim against Sanchez.

If plaintiff chooses to amend the complaint, he must allege in specific terms how each named defendant has caused him actionable harm. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Finally, plaintiff is informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. Local Rule 220 requires that an amended complaint be

complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 929 (9th Cir. 2012) (claims dismissed with prejudice and without leave to amend do not have to be re-pled in subsequent amended complaint to preserve appeal). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

**VII.    Motion to Amend and to Transfer**

Plaintiff has also filed a motion to amend to add additional claims against defendant Pierce. (ECF No. 9.) That motion is granted to the extent that plaintiff is being given the option to amend the complaint. However, any amended complaint will also be subject to screening before it can proceed. The motion also requests that he be transferred to another prison. (Id.) Since filing the motion plaintiff has been released from prison (ECF Nos. 10, 11) and so the motion will be denied as moot.

**VIII.    Plain Language Summary of this Order for a Pro Se Litigant**

Your motion for leave to proceed in forma pauperis is granted.

Claim Five regarding the incident in which Huisar allegedly violently slammed you into the A.D.A. cage states a valid excessive force claim under the Eighth Amendment. Huisar will be required to respond to these allegations. Similarly, the parts of Claim Four and Six in which you claim Sanchez deliberately applied the handcuffs too tightly, causing marks and cuts on your wrists, states a valid excessive force claim under the Eighth Amendment and his deliberate interference with your mental health treatment states a claim for deliberate indifference. Sanchez will be required to respond.

All remaining claims are dismissed with leave to amend because you have not provided enough facts to support claims for relief.

Your options are as follows. You may either (1) proceed immediately on your Eighth Amendment claims against Huisar and Sanchez, or (2) try to amend the complaint to correct the

14

deficiencies in your claims against the other defendants. If you wish to proceed on the excessive force claims against Huisar and Sanchez and the deliberate indifference claim against Sanchez without amending the complaint, you will be voluntarily dismissing all of your other claims without prejudice. If, however, you wish to amend your complaint, you must explicitly state all claims you intend to make, including the ones that have already been found to state a valid claim, because the court will *only* consider claims or information contained in the amended complaint. **Any claims not in the amended complaint will not be considered.** You must complete the attached notification showing what you want to do and return it to the court. Once the court receives the notice, it will issue an order telling you what you need to do next (i.e., file an amended complaint or complete and return service paperwork).

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for leave to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff's motion to amend the complaint (ECF No. 9) is granted to the extent he is being given the option to amend the complaint or proceed on the cognizable claims.

3. Plaintiff's motion to be transferred to another prison (ECF No. 9) is denied as moot.

4. The allegations in Claim Five against Huisar for using excessive force and the components of Claims Four and Six in which Sanchez applied the handcuffs too tightly and interfered with plaintiff's mental health treatment, state valid claims for relief. All other claims and defendants are dismissed with leave to amend.

5. Plaintiff has the option to proceed immediately on his Eighth Amendment excessive force and deliberate indifference claims against Huisar and Sanchez, or to amend the complaint.

6. Within fourteen days of service of this order, plaintiff shall complete and return the attached form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

Dated: August 16, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

13.5:patr1205.14option

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS PATRICK,<br><br>                Plaintiff,<br><br>        v.<br><br>PIERCE, et al.,<br><br>                Defendants. | No. 2:17-cv-1205-CKD P<br><br><br>PLAINTIFF'S NOTICE ON HOW TO PROCEED |

Check one:

\_\_\_\_\_ Plaintiff wants to proceed immediately on his Eighth Amendment excessive force and deliberate indifference claims against defendants Huisar and Sanchez without amending the complaint.  Plaintiff understands that going forward without amending the complaint means that he is voluntarily dismissing without prejudice all his claims against defendants Pierce, Crozier, Quick, Hernandez Kaplain, Altshuler, Perez, and Chudy and his failure to protect claim against defendant Sanchez.

\_\_\_\_\_ Plaintiff wants to amend the complaint.

DATED:_____

NICHOLAS PATRICK
Plaintiff pro se