UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NICHOLAS PATRICK,

    Plaintiff,

v.

PIERCE, et al.,

    Defendants.

No. 2:17-cv-1205 KJM CKD P

FINDINGS & RECOMMENDATIONS

Plaintiff is a former state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendants' motion for summary judgment (ECF No. 39) which plaintiff opposes (ECF No. 48).

I.     Procedural History

On June 8, 2017, plaintiff filed the complaint asserting various claims against defendants Pierce, Crozier, Sanchez, Quick, Hernandez, Kaplain, Huizar, Altshuler, Perez, and Chudy. (ECF No. 1.) The court screened the complaint and found that it stated claims for excessive force against Huizar and for excessive force and deliberate indifference against Sanchez, while all other claims and defendants were dismissed with leave to amend. (ECF No. 12 at 15.) Plaintiff was given the option to proceed on the complaint as screened or to amend (id.) and was warned that failure to notify the court how he wanted to proceed would be construed as a decision to proceed without amendment (ECF No. 15). When plaintiff failed to provide the required notice, the case

1

proceeded on the screened complaint and the remaining defendants and claims were deemed voluntarily dismissed without prejudice. (ECF No. 16.) The undersigned's dismissal of defendants Pierce, Crozier, Quick, Hernandez, Kaplain, Altshuler, Perez, and Chudy and the failure to protect claim against defendant Sanchez was later vacated, and the defendants and claims were dismissed by the assigned District Judge for the same reasons set forth in the screening order to avoid any potential defects under Williams v. King, 875 F.3d 500 (9th Cir. 2017). (ECF No. 22; ECF No. 24.) The case continued to proceed against Huizar and Sanchez, and after the close of discovery defendants filed the instant motion for summary judgment based on plaintiff's alleged failure to exhaust administrative remedies. (ECF No. 39.)

II. Plaintiff's Allegations

Plaintiff alleges that on April 28, 2017, defendant Huizar used excessive force when he violently jerked plaintiff around during an escort and slammed him against the A.D.A. cage, resulting in injuries to his knee, neck, and back. (ECF No. 1 at 8.) He further alleges that defendant Sanchez made a habit of deliberately cuffing him tight enough to leave marks and cuts, without any justification, and then denying him access to group treatment when plaintiff refused to let Sanchez cuff him in order to avoid injury. (Id. at 11-12.)

III. Motion for Summary Judgment

A. Defendants' Arguments

Defendants argue that the complaint should be dismissed because plaintiff's administrative remedies related to the claims in this case were either not exhausted or were exhausted well after the complaint was filed. (ECF No. 39-1.)

B. Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff has also failed to file a separate document disputing defendants' statement of undisputed facts, as required by Local Rule 260(b).

However, it is well-established that the pleadings of pro se litigants are held to "less

stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

In response to the motion, plaintiff argues that administrative remedies were not available as to one of his appeals, while two other appeals were exhausted at the third level of appeal. (ECF No. 48.)

IV. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment. ECF No. 39-3; see Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V. Legal Standards for Exhaustion

Because plaintiff was a prisoner suing over the conditions of his confinement at the time the operative complaint was filed, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a); Jackson v. Fong, 870 F.3d 928, 935 (9th Cir. 2017) ("Exhaustion requirements apply based on when a plaintiff files the operative complaint." (citations omitted)). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006); Jones v. Bock, 549 U.S. 199, 211 (2007)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones, 549 U.S. at 204, 216. "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d

5

767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original) (citation omitted). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 136 S. Ct. at 1856. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857 (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

As long as some potential remedy remained available through the administrative appeals process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."); Brown, 422 F.3d at 936-37. The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a

6

grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d at 1168-69.

VI. California Regulations Governing Exhaustion of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. This review process is set forth in California regulations. In 2017, those regulations allowed prisoners to "appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . [could] demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2017).

At the time plaintiff was proceeding through the appeals process, it was comprised of three levels. Id., § 3084.7. All appeals were to "be initially submitted and screened at the first level unless the first level [was] exempted" and under certain circumstances the appeals coordinator could bypass the first level of appeal. Id., § 3084.7(a). The second level was "for review of appeals denied or not otherwise resolved to the appellant's satisfaction at the first level, or for which the first level [was] otherwise waived by these regulations." Id., § 3084.7(b). The third level was "for review of appeals not resolved at second level." Id., § 3084.7(c).

Each prison was required to have an appeals coordinator whose job was to "screen all appeals prior to acceptance and assignment for review." Id., § 3084.5(b). In certain situations, an appeal could be "rejected" or "cancelled." Id., § 3084.6 (b), (c). The time limits for responding to an appeal began to run "upon the date of receipt of the appeal form by the appeals coordinator." Id., § 3084.8(a). First level responses were to "be completed within 30 working days from date of receipt by the appeals coordinator." Id., § 3084.8(c)(1). "[I]f an exceptional delay prevent[ed] completion of the review within specified time limits, the appellant, within the time limits provided in subsection 3084.8(c), [was to] be provided an explanation of the reasons for the delay and the estimated completion date." Id., § 3084.8(e). Appeals were subject to a

7

third level review before they were deemed exhausted, and a cancellation or rejection did not exhaust administrative remedies. Id., § 3084.1(b).

VII. Undisputed Material Facts

As noted above, plaintiff did not file a response indicating whether any of defendants' statements of fact were disputed. Accordingly, all of defendants' facts are deemed undisputed except where otherwise noted.

At the time the complaint was filed, plaintiff was a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR). Defendants' Undisputed Statement of Facts (DSUF) (ECF No. 39-2) ¶ 1.

Plaintiff contends that two grievances, MCSP-17-02173 and MCSP-C-17-03789, and Health Care Services Request Form No. 5968038, exhausted the allegations against defendant Huizar. DSUF ¶ 9. Grievance MCSP-17-02173 was submitted on May 1, 2017, and was denied at the third level of review on November 20, 2017 (DSUF ¶¶ 10-11), while grievance MCSP-C-17-03789 was submitted on September 5, 2017, cancelled at the first level of review on November 8, 2017, and was not accepted for review or screened out at the third level of review (DSUF ¶¶ 12-13). Health Care Services Request Form No. 5968038 was not a grievance. DSUF ¶ 14.

Plaintiff further claims that two additional grievances, MCSP-17-01630 and MCSP-C-01984, exhausted his claims against defendant Sanchez. DSUF ¶ 15. Grievance MCSP-17-01630 was submitted on May 8, 2017 and was denied at the third level of review on October 23, 2017. DSUF ¶¶ 16-17. Defendants assert that grievance MSCP-C-01984 was submitted on May 13, 2017 (DSUF ¶ 18), while plaintiff alleges it was submitted on May 3, 2017 (ECF No. 48 at 1). The grievance was initially rejected on July 10, 2017 and was later canceled at the first level of review on November 8, 2017. DUSF ¶¶ 19-20. Plaintiff did not appeal the cancellation of the grievance and it was not accepted for review or screened out at the third level of review. DSUF ¶¶ 20-21. He also did not file a grievance related to his claim that defendant Sanchez interfered with his mental health treatment by deliberately handcuffing him too tightly so that he would refuse to leave his cell for treatment. DSUF ¶ 22.

8

VIII. <u>Discussion</u>

Defendants move for summary judgment on the ground that plaintiff failed to exhaust any of the claims against them prior to filing the complaint. (ECF No. 39-1.) Specifically, they argue that of the grievances plaintiff identified as exhausting his claims, two (MCSP-17-02173 and MCSP-17-01630) were exhausted well after the complaint was filed, two (MCSP-C-17-03789 and MSCP-C-01984) were cancelled and therefore not exhausted, and one (Health Care Services Request Form No. 5968038) was not actually a grievance capable of exhausting his administrative remedies. (<u>Id.</u>)

As an initial matter, plaintiff's opposition to the motion for summary judgment does not address appeal MCSP-C-17-03789 or Health Care Services Request Form No. 5968038 (ECF No. 48), and he is therefore deemed to have conceded that neither the appeal nor the health care services request exhausted his administrative remedies. Instead, the opposition focuses on the other three grievances and asserts that summary judgment should be denied because he was not required to exhaust administrative remedies if the institution failed to take corrective action because he was seeking relief from "excessive force abuse" rather than monetary damages. (ECF No. 48 at 1.) Plaintiff provides no further elaboration on this claim, which appears to be an argument that he was not required to exhaust his administrative remedies because he was not granted the relief he sought through the grievance process. However, this argument is without merit. The fact that plaintiff was not granted the relief he sought does not excuse the requirement that he exhaust his administrative remedies because he has not shown that there were no remedies available. <u>Booth</u>, 532 U.S. at 741 & n.6; <u>Brown</u>, 422 F.3d at 936-37.

Plaintiff further argues that summary judgment should be denied because grievances MCSP-17-02173 and MCSP-17-01630 were exhausted at the third level. (ECF No. 48 at 2.) However, he does not dispute that these grievances were exhausted in October and November of 2017 respectively. The complaint in this case was filed on June 8, 2017, and these grievances were therefore not exhausted until several months after the complaint was filed. Exhaustion must occur before the complaint is filed, and the subsequent exhaustion of claims after the filing of the complaint does not excuse the earlier failure to exhaust. <u>Vaden v. Summerhill</u>, 449 F.3d 1047,

9

1051 (9th Cir. 2006) ("Because [plaintiff] did not exhaust his administrative remedies prior to sending his complaint to the district court, the district court must dismiss his suit without prejudice." (citation omitted)). Accordingly, neither of these grievances establish grounds for denying the motion for summary judgment.

Finally, while plaintiff admits that grievance MCSP-C-17-01984 was cancelled, he argues that exhaustion was excused because administrative remedies were not available as to that grievance. (ECF No. 48 at 1-2.) Plaintiff claims that he filed the grievance on May 3, 2017, but it was delayed for response until July 10, 2017, and he did not receive the response until an additional two weeks after that. (Id.) He cites cases which he argues establish that a grievance is exhausted if prison officials fail to respond within the applicable timelines and that a failure to respond renders administrative remedies unavailable. (Id.) He further claims that his response was late because prison officials withheld the grievance "until they felt like returning it," and then it was cancelled. (Id. at 2.)

Defendants argue that plaintiff previously stated that he submitted the grievance on May 13, 2017, less than a month before he filed the complaint, and that he cannot now change his testimony. (ECF No. 49 at 3.) Given the timing, they assert it would have been impossible for plaintiff to exhaust his administrative remedies within that time and that regardless, plaintiff did not exhaust his remedies because he could have appealed the cancellation. (Id. at 3-4.) They further argue that the cases cited by plaintiff are not controlling and are distinguishable from the circumstances in this case. (Id. at 4.)

Although it is undisputed that plaintiff's grievance received a response, defendants fail to address the allegation that the response was untimely, regardless of whether the grievance was submitted on May 3 or May 13.[1] Assuming the grievance was received by the appeals coordinator on May 3, 2017, as plaintiff claims, a response would have been due no more than

---

[1] The court finds defendants' argument that it would have been *impossible* for plaintiff to have exhausted his administrative remedies prior to filing suit to be inaccurate. Though it certainly appears to be *improbable* that the grievance would have been processed through the third level within the time between initial submission and the filing of the complaint, the timelines in the regulations are maximum, not minimum, processing times, and there does not appear to be anything that would prohibit prison officials from processing the grievance on a shorter timeline.

10

thirty working days later, on June 15, 2017. If the grievance was received on May 13, 2017, the response would have been due by June 26, 2017. Plaintiff claims that a response was not issued until July 10, 2017, and that he did not receive that response until an additional two weeks had passed. (ECF No. 48 at 1-2.) Defendants' statement of facts acknowledges that a response was not issued until July 10, 2017 (DSUF ¶ 19), and they do not dispute that plaintiff's receipt of the response was further delayed.

Although the Ninth Circuit has not held that the failure to timely respond to a grievance automatically renders the grievance exhausted, it has noted that "[d]elay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available." Brown, 422 F.3d at 943 n.18 (citations omitted); see also Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." (citing various cases holding that the failure to respond to a grievance within policy time limits renders administrative remedies exhausted)); Mills v. Mitchell, No. 18-15531, 2020 WL 584354, at *1 (9th Cir. Feb. 6, 2020) ("CDCR's repeated failure to meet the statutorily required deadlines and failure to provide proper notice [regarding the extension of deadlines] made remedies effectively unavailable." (citation omitted)). In this case, plaintiff states that grievance MCSP-C-17-01984 "was delayed for response until 07/10/2017," but it is unclear whether he is claiming that prison officials failed to provide the required notice of delay, and defendants have offered no evidence that such notice was provided. Taking the facts currently available in the light most favorable to plaintiff, prison officials failed to timely respond to his first level grievance or provide the required notice of delay. However, even assuming without deciding that in this case the failure to timely respond exhausted grievance MCSP-C-17-01984, the earliest such exhaustion would have occurred was June 15, 2017, a full week after the complaint in this case was filed. See Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired." (footnote citation omitted)); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (administrative remedies are deemed "exhausted when prison officials fail to respond to inmate

grievances because those remedies had become 'unavailable.'" (citations omitted)).  Accordingly, any exhaustion of grievance MCSP-C-17-01984 occurred too late.

IX. Conclusion

For the reasons outlined above, plaintiff failed to exhaust any of his claims prior to filing the operative complaint.  Defendants' motion for summary judgment should therefore be granted and the complaint should be dismissed without prejudice for failure to exhaust.

X. Plain Language Summary of this Order for a Pro Se Litigant

Your claims had to be exhausted before you filed your complaint.  Even though you did exhaust some of your claims, you did not exhaust them until after you filed the complaint and so your complaint should be dismissed.

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 39) be granted and the complaint be dismissed without prejudice for failure to exhaust administrative remedies.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 21, 2020

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

13:patr1205.msj.f&r

12